## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| MUSIC CHOICE, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **C.A. No. 2:16-CV-876** |
| **v.** | ) |
| | ) |
| STINGRAY DIGITAL GROUP INC. | ) **Jury Trial Demanded** |
| | ) |
| **Defendant.** | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Music Choice, by its undersigned counsel, with knowledge as to its own acts and status, and upon information and belief as to the acts and status of others, for its Complaint against defendant Stingray Digital Group Inc. ("Stingray"), alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action for patent infringement under the United States patent laws, 35 U.S. C. § 1, *et seq.*  The accused instrumentalities include the Stingray Music products and services ("Stingray Music System/Method") that provides digital audio music channels and music videos on demand through cable operator, satellite, and/or Internet Protocol (IP) television platforms, and is used, sold and/or offered for sale in, and/or imported into, the United States, in the State of Texas, and in this judicial district, by defendant Stingray.  By way of example, the Stingray Music System/Method infringes at least claims 1, 6, and 14 of U.S. Patent No. 9,414,121, which patent is owned for all purposes by Plaintiff Music Choice.

## THE PARTIES

2.      Plaintiff Music Choice is a Pennsylvania general partnership, and has its principal place of business at 650 Dresher Road, Horsham, PA 19044.  Music Choice is doing business in this judicial district.

3.      Music Choice is a pioneer in the digital music field.  In 1991, the founders of Music Choice launched one of the first digital audio services in the World.  Since that time, Music Choice has significantly expanded its programming services, and today provides a multi-platform music network.  Music Choice has been, and continues to be, a leading innovator of the technology enabling the programming, production and distribution of video and audio music content for digital cable, satellite and IP television, broadband (PCs) and mobile devices.

4.      Music Choice's products and services currently include 75 commercial interruption free audio music channels, 25 music video channels and single-play video on demand (VOD) content.  Music Choice's music channels and VOD content are among the most listened to and watched in the United States.  These products and services are available on a linear and/or "TV Everywhere" basis.  Music Choice currently has approximately 47.2 million monthly listeners averaging 28.2 hours per week, and in 2015 Music Choice's videos were the most watched free VOD content.  Music Choice's VOD views represent 10% of all VOD views in participating networks.

5.      Music Choice has spent considerable time, effort, and money over the years building its business in audio music channels, music video channels, video on demand services, and TV Everywhere services, developing and deploying proprietary digital audio and VOD technology, and protecting that technology by pursuing and securing patent rights.

6.     Defendant Stingray Digital Group Inc. ("Stingray") is a Canadian corporation with its principal place of business at 730 Wellington Street, Montreal, Quebec, Canada H3C 1T4.  Stingray currently has over 250 employees across the world.  Stingray is doing business in the United States, in the State of Texas, and in this judicial district.

## JURISDICTION AND VENUE

7.     This is a civil action for patent infringement arising under the patent laws, 35 U.S.C. §§ 1 *et seq.*  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     Stingray has solicited business in the State of Texas, transacted business within the State of Texas, and attempted to derive financial benefit from residents of the State of Texas, including benefits directly related to the instant patent infringement cause of action set forth herein.

9.     Stingray has placed its infringing Stingray Music System into the stream of commerce, and practiced its infringing Stingray Music Method, throughout the United States with the expectation that they will be used in this judicial district, which systems and methods have been used in this judicial district.

10.     Stingray is subject to personal jurisdiction in this judicial district because it is present within, has minimum contacts with, and regularly conducts business in the State of Texas and the Eastern District of Texas.  Music Choice's cause of action arises directly from Stingray's business contacts and other activities in the State of Texas and in this judicial district.

11.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

12.     The Stingray Music System/Method has been, and continues to be, used and distributed by Stingray in the Eastern District of Texas.  More specifically, Stingray, directly and/or through its agents and intermediaries, has placed the Stingray Music System/Method into the stream of commerce throughout the United States through established channels, including multichannel video programming distributors (MVPDs), with the expectation and/or knowledge that the Stingray Music System/Method will be used, sold, and offered for sale in, and/or imported into, the State of Texas and in this judicial district.

13.     Without limiting the foregoing, Stingray provides the Stingray Music System/Method to MVPDs and subscribers/end users in this judicial district with Stingray's UbiquiCAST distributed broadcast architecture, including UbiquiCAST servers that are set-up and configured to each MVPD's specific requirements.   These configured UbiquiCAST servers are shipped to MVPD headends, where they are installed and are used by Stingray to provide the Stingray Music System/Method to MVPDs and to subscribers/end users through receivers in this judicial district in conjunction with delivered audio and video programming services.  For example, Stingray's UbiquiCAST servers are installed at AT&T's headends located in Texas and provide the Stingray Music System/Method via AT&T's U-Verse® TV services to subscribers/end users through receivers in this judicial district.  Stingray uploads new content and program scheduling data for the Stingray Music System/Method by a secure virtual private network link to its UbiquiCAST servers located in Texas.  Such updates are automatic, and the management of the UbiquiCAST servers located in Texas is remotely controlled by Stingray. Stingray further provides twenty-four hour, seven days a week help and support for its UbiquiCAST servers located in Texas.

## THE PATENT-IN-SUIT

14.     U.S. Patent No. 9,414,121 ("the '121 Patent"), entitled "Systems And Methods For Providing An On-Demand Entertainment Service," was duly and lawfully issued by the U.S. Patent and Trademark Office on August 9, 2016.  A true and correct copy of the '121 Patent is attached as Exhibit A.

15.     The '121 Patent lists Stuart H. Farber, Ronald M. Yurman, Jeremy C. Rosenberg, Robert M. Steinberg, John J. Feras Jr., Daniel L. McGonigal, Donna M. O'Neill, Christina B. Tancredi, and David J. Del Beccaro as inventors.

16.     Music Choice is the owner of the '121 Patent by valid assignment from the inventors.  Music Choice owns all rights, title, and interest in the '121 Patent, including the right to sue for and recover all past, present, and future damages for infringement of the '121 Patent.

17.     The Abstract of the '121 Patent provides as follows: "The present invention provides systems and methods for, in some cases, supplementing a broadcast media service with an on-demand service."

## STINGRAY'S INFRINGING CONDUCT

18.     Stingray owns, operates, and is otherwise responsible for the Stingray Music System/Method, which provides digital audio music channels and music videos on demand through cable operator, satellite, and/or Internet Protocol television platforms, such as AT&T's U-Verse® service.  The accused Stingray Music System/Method is used, sold and/or offered for sale in the United States, and/or imported into the United States, by defendant Stingray.

19.     Beginning in 2006, Music Choice established a relationship with AT&T to provide Music Choice products and services on the AT&T U-Verse® service.  The first agreement with AT&T concluded in 2007.  During the period from fall 2010 through early 2011,

Music Choice and AT&T negotiated a new agreement for AT&T's carriage of Music Choice's products and services on the AT&T U-Verse® service through December 2013, which agreement was subsequently renewed/extended.

20.     In the 2010-2011 time period, Music Choice became aware that Stingray was trying to displace Music Choice as the provider of digital audio music channels and music videos on demand on AT&T's U-Verse® service.  At that time, it appeared that the Stingray product offering was an inferior product that lacked the enhanced functionality enabled by technology designed, developed, and patented by Music Choice.  While Music Choice was successful in gaining AT&T's business, as a consequence of the very aggressive pricing offered by Stingray to AT&T, Music Choice was forced to lower its subscriber rates and to enter into a short term agreement.  Music Choice sought to negotiate a longer term arrangement with AT&T to extend beyond December 2013, but was not able to reach agreement with AT&T on terms, and only executed two renewals to extend the term of the current agreement through first, February 28, 2014, and then subsequently through February 28, 2015.

21.     Prior to the December 2013 contract expiration with AT&T and subsequent extension, Stingray expressed an interest in acquiring Music Choice.  In 2010, Music Choice learned that Stingray was focused on entering the U.S. market.  Stingray's expansion plans appeared, initially, to involve acquisition of an already going concern in the U.S. that would provide Stingray with access to an existing music service and the technology, rights, affiliates and subscribers necessary to penetrate and operate in the U.S. market.  Throughout the period from 2011 to 2015, Stingray had repeated contacts with Music Choice, as well as with Music Choice's partners, and MVPDs and affiliates that Music Choice had contracts with, about its interest in acquiring Music Choice.

22.     As part of its expressions of interest to acquire Music Choice, Stingray repeatedly sought access to Music Choice's confidential business and financial information, including its agreements with MVPDs and affiliates, Music Choice's proprietary technology, and its portfolio of issued patents and pending applications.  In May 2013, Stingray and Music Choice executed a Confidentiality Agreement, as well as a subsequent letter agreement in June 2013, pursuant to which Stingray was provided access to much of the documentation and information it sought.  In addition to reviewing Music Choice's confidential documents, Stingray personnel and their representatives inspected Music Choice's facilities in Horsham, Pennsylvania and in New York City, and conducted interviews of Music Choice personnel.

23.     After having access to Music Choice's confidential and proprietary technical documents and information, business and financial documents and information, and issued patents and pending applications, Stingray, in the fall of 2014, launched, as part of AT&T's U-Verse® services, an improved digital audio music and video on demand system and service that included the features and functionality infringing Music Choice's patents – features and functionality that Music Choice had not previously observed in Stingray's product offering prior to Stingray's access to the information it obtained from Music Choice.

24.     In October 2014, Music Choice was informed that AT&T was eliminating Music Choice on AT&T's U-Verse® service effective March 1, 2015, and that Music Choice's service would effectively be replaced with the infringing Stingray Music System/Method carried by AT&T.

25.     In addition to the infringing Stingray Music System/Method provided on the AT&T U-Verse® service, Stingray announced, in May 2016, that it will expand its partnership with Comcast to also provide the Stingray Music System/Method to Comcast Xfinity customers.

In connection with the announcement, the senior vice president of marketing and communications for Stingray told Multichannel News that "[t]he ability to curate playlists or access already created playlists on your large screen in your living room is an [*sic*] much better experience compared to digital."  *See,* R. Thomas Umstead, "Stingray Expands Deal with Comcast," Multichannel News (May 2, 2016), available at http://www.multichannel.com/news/content/stringray-strikes-music-chord-comcast/404616.   As explained in further detail below, this functionality, touted by Stingray as providing a "much better experience," is believed to be part of the technology developed by Music Choice disclosed and claimed in the '121 Patent.

26.     Stingray provides the Stingray Music System/Method to MVPDs and subscribers/end users with Stingray's UbiquiCAST distributed broadcast architecture, including UbiquiCAST servers that are set-up and configured to each MVPD's specific requirements. These configured UbiquiCAST servers are shipped to MVPD headends, where they are installed and are used by Stingray to provide the Stingray Music System/Method to MVPDs and to subscribers/end users through receivers in conjunction with delivered audio and video programming services.  For example, Stingray's UbiquiCAST servers are installed at AT&T's headends and provide the Stingray Music System/Method via AT&T's U-Verse® TV services to subscribers/end users through receivers.  Stingray uploads new content and program scheduling data for the Stingray Music System/Method by a secure virtual private network link to its UbiquiCAST servers.  Such updates are automatic, and the management of the UbiquiCAST servers is remotely controlled by Stingray.  Stingray further provides twenty-four hour, seven days a week help and support for its UbiquiCAST servers.

27.     Stingray has contractual relationships with partner MVPDs, such as, for example, AT&T, regarding the operation and use of the Stingray Music System/Method.  Through these contractual relationships, Stingray and its partner MVPDs form a joint enterprise in provisioning and/or performing the Stingray Music System/Method to which Stingray has at least an equal voice.  Moreover, through these contractual relationships, Stingray controls the manner and timing of an MVPD's provisioning or performance of the Stingray Music System/Method, and conditions an MVPD's receipt of benefits or participation in the Stingray Music System/Method by configuring, installing, and programming Stingray's UbiquiCAST servers at MVPD headends.

28.     On June 6, 2016, Music Choice filed a patent infringement action against Stingray in this Court, C.A. No. 2:16-cv-586, alleging that the Stingray Music System/Method infringes various claims of Music Choice's U.S. Patent No. 8,769,602, No. 9,357,245, No. 7,320,025 and No. 9,351,045, which is now pending ("First Lawsuit").  This action alleges infringement by Stingray of U.S. Patent No. 9,414,121, which issued on August 9, 2016, more than two months after the filing of the First Lawsuit against Stingray.

29.     The Stingray Music System/Method infringes, literally and/or under the doctrine of equivalents, at least claims 1, 6, and 14 of the '121 Patent, as explained in detail below.

30.     Stingray has and continues to use, sell and/or offer for sale in the United States, and/or import into the United States, the infringing Stingray Music System/Method despite an objectively high likelihood that its actions constituted infringement of the '121 Patent.  This objectively-defined risk of infringement was known or so obvious that it should have been known to Stingray.

31.     Stingray has used and continues to use the Stingray Music System in a manner that infringes, literally and/or under the doctrine of equivalents, at least claim 1 of the '121 Patent.  Stingray puts the invention of claim 1 of the '121 Patent into service, *i.e.*, by controlling the Stingray Music System as a whole and obtaining benefit from it.  Specifically, through the Stingray Music System, Stingray directly, and/or in conjunction with one or more intermediaries or agents (*e.g.*, AT&T using (i) a UbiquiCAST server provided by Stingray, (ii) the AT&T U-verse® system provided by AT&T, and (iii) a set top box provided by AT&T), provides a system for providing an on-demand, personalized media service and a broadcast service to a set-top-box.





32.     The Stingray Music System includes/uses a distribution network (*e.g.*, AT&T's U-verse® distribution network).  The set-top-box (*e.g.*, the AT&T set-top-box) is connected to the distribution network.

33.     The Stingray Music System transmits a plurality of media channels (*e.g.*, the streaming music channels available using the Stingray music app on AT&T U-verse®).

34.     The Stingray Music System includes/uses a distribution system including a transmission system operable to transmit via the distribution network (*e.g.*, AT&T's U-verse® distribution network) a media channel (*e.g.*, a "Classic Rock" media channel) comprising a stream of audio and video data (*e.g.*, audio data for the song "Back on the Chain Gang" or "Workin' for MCA" and video data including song title, artist name, and album art data).

35.     In the Stingray Music System, the set-top-box is operable to receive the media channel (*e.g.*, a "Classic Rock" media channel) via the distribution network.

36.     In the Stingray Music System, the set-top-box is operable to reproduce the stream of audio data (*e.g.*, audio data for the song "Back on the Chain Gang" or "Workin' for MCA") included in the received media channel (*e.g.*, the "Classic Rock" media channel) for a user of the client system (*e.g.*, the device running the Stingray Music app) to hear.

37.     In the Stingray Music System, the set-top-box is operable to display video corresponding to the stream of video data (*e.g.*, video corresponding to the song title, artist name, and album art data for the song "Back on the Chain Gang" or "Workin' for MCA") included in the received media channel (*e.g.*, the "Classic Rock" media channel) on a display device for the user to see.



38.     In the Stingray Music System, the set-top-box is operable to receive via the distribution network video identifier information comprising an identifier (*e.g.*, a thumbnail or title identifying a music video for the song entitled "Close") for identifying an available on-demand video (*e.g.*, the music video for the song entitled "Close") while displaying on the display device the video corresponding to the stream of video data (*e.g.*, the video corresponding to the song title, artist name, and album art data) included in the received media channel (*e.g.*, the "Classic Rock" media channel).



39.     In the Stingray Music System, the set-top-box is operable to display a user selectable element (*e.g.*, a thumbnail image for the music video for the song entitled "Close") for requesting the available on-demand video (*e.g.*, the music video for the song entitled "Close") on the display device so that the user selectable element is displayed on the display device together with at least a portion of the video corresponding to the stream of video data (*e.g.*, video corresponding to the song title, artist name, and album art data for the song "Back on the Chain Gang" or "Workin' for MCA") as a result of receiving the video identifier information (*e.g.*, the thumbnail or title identifying a music video for the song entitled "Close") transmitted to the set-top-box using the distribution network.  The user selectable element (*e.g.*, the thumbnail image for the music video for the song entitled "Close") is associated with the available on-demand video (*e.g.*, the music video for the song entitled "Close").



40.     In the Stingray Music System, the set-top-box is operable to, in response to the user of the set-top-box selecting the user selectable element (*e.g.*, the thumbnail or title identifying the music video for the song entitled "Close"), causing an on-demand video system (*e.g.*, the Stingray UbiquiCAST music content origin server) to transmit to the set-top-box the available on-demand video (*e.g.*, the music video for the song entitled "Close") by transmitting

to the on-demand video system an on-demand request message (*e.g.*, a message indicating that the thumbnail or title identifying the music video for the song entitled "Close" was selected).



41.     Stingray has used and continues to use the Stingray Music Method in a manner that infringes, literally and/or under the doctrine of equivalents, at least claim 6 of the '121 Patent.  Specifically, through the Stingray Music Method, Stingray directly, and/or in conjunction with one or more intermediaries or agents performs a method for providing an on-demand service to a user of a set-top-box (*e.g.*, an AT&T set-top-box).





42.     In the Stingray Music Method, the set-top-box (*e.g.*, the AT&T set-top-box)

receives via a cable connected to a network (*e.g.*, AT&T's U-verse® distribution network) a

media channel (*e.g.*, the "Classic Rock" media channel) comprising a stream of audio and video

data (*e.g.*, audio data for the song "Back on the Chain Gang" or "Workin' for MCA" and video

data including song title, artist name, and album art data).

43.     In the Stingray Music Method, the set-top-box displays on a display device video

corresponding to the video data stream (*e.g.*, video corresponding to the song title, artist name,

and album art data for the song "Back on the Chain Gang" or "Workin' for MCA").



44.     In the Stingray Music Method, while displaying said video (*e.g.*, the video corresponding to the song title, artist name, and album art data for the song "Back on the Chain Gang" or "Workin' for MCA"), the set-top-box receives video identifier information (*e.g.*, a thumbnail or title identifying a music video for the song entitled "Close") transmitted via the cable connected to the network.  The video identifier information comprises an identifier for identifying an available on-demand video (*e.g.*, the music video for the song entitled "Close").



45.     In the Stingray Music Method, the set top box displays on the display device, as a result of receiving said video identifier information (*e.g.*, the thumbnail or title identifying the music video for the song entitled "Close"), a user selectable element (*e.g.*, a thumbnail image for the music video for the song entitled "Close") for requesting the available on-demand video (*e.g.*, the music video for the song entitled "Close") while also displaying video corresponding to the video data stream (*e.g.*, the video corresponding to the song title, artist name, and album art data for the song "Back on the Chain Gang" or "Workin' for MCA") so that the user can see the user selectable element (*e.g.*, the thumbnail image for the music video for the song entitled "Close") while also seeing the displayed video corresponding to the video data stream (*e.g.*, the video corresponding to the song title, artist name, and album art data for the song "Back on the

Chain Gang" or "Workin' for MCA").  The user selectable element (*e.g.*, the thumbnail image for the music video for the song entitled "Close") is associated with the available on-demand video (*e.g.*, the music video for the song entitled "Close").



46.     In the Stingray Music Method, the set-top-box detects that the user has selected the selectable element (*e.g.*, the thumbnail image for the music video for the song entitled "Close") for requesting the available on-demand video (*e.g.*, the music video for the song entitled "Close").

47.     In the Stingray Music Method, in response to detecting that the user has selected the selectable element (*e.g.*, the thumbnail or title identifying the music video for the song entitled "Close"), the set-top-box causes an on-demand video system (*e.g.*, the Stingray UbiquiCAST music content origin server) to transmit to the set-top-box the available on-demand video (*e.g.*, the music video for the song entitled "Close").  Causing the on-demand video system to transmit to the set-top-box the available on-demand video (*e.g.*, the music video for the song entitled "Close") comprises the set-top-box transmitting to the on-demand video system an on-demand request message (*e.g.*, a message indicating that the thumbnail or title identifying the music video for the song entitled "Close" was selected) configured to cause the on-demand video

system to transmit to the set-top-box the available on-demand video (*e.g.*, the music video for the song entitled "Close").

48.     Stingray has used and continues to use the Stingray Music Method in a manner that infringes, literally and/or under the doctrine of equivalents, at least claim 14 of the '121 Patent.  Specifically, through the Stingray Music Method, Stingray directly, and/or in conjunction with one or more intermediaries or agents (*e.g.*, AT&T, by the AT&T set-top-box) performs a method for providing an on-demand service to a user of a set-top-box (*e.g.*, an AT&T set-top-box).





49.      In the Stingray Music Method, the set-top-box (*e.g.*, the AT&T set-top-box)

receives via a cable connected to a network (*e.g.*, AT&T's U-verse® distribution network) a

media channel (*e.g.*, the "Hit List" media channel) comprising a stream of audio and video data

(*e.g.*, audio corresponding to the song "Uptown Funk!" and video data including song title, artist

name, and album art data).



50.      In the Stingray Music Method, the set-top-box displays on a display device video

corresponding to the video data stream (*e.g.*, video corresponding to the song title, artist name,

and album art data for the song "Uptown Funk!").

51.      In the Stingray Music Method, while displaying said video (*e.g.*, the video

corresponding to the song title, artist name, and album art data for the song "Uptown Funk!"),

the set-top-box receives on-demand video information (*e.g.*, search suggestions resulting from

the searching on-demand videos for "mars") transmitted via the cable connected to the network.

52.      In the Stingray Music Method, the set top box displays on the display device, as a

result of receiving the on-demand video information (*e.g.*, the search suggestions resulting from

the searching on-demand videos for "mars"), a user selectable element (*e.g.*, a user selectable

element for the suggested search for Bruno Mars videos) for requesting information identifying a

set of available on-demand videos (*e.g.*, the set of 12 available Bruno Mars on-demand videos) while also displaying the video corresponding to the video data stream (*e.g.*, the video corresponding to the song title, artist name, and album art data for the song "Uptown Funk!") so that the user can see the user selectable element (*e.g.*, the user selectable element for the suggested search for Bruno Mars videos) while also seeing the displayed video corresponding to the video data stream (*e.g.*, the video corresponding to the song title, artist name, and album art data for the song "Uptown Funk!").  The user selectable element (*e.g.*, the user selectable element for the suggested search for Bruno Mars videos) is associated with the set of available on-demand videos (*e.g.*, the set of 12 available Bruno Mars on-demand videos).

53.     In the Stingray Music Method, in response to the user of the client system selecting the user selectable element (*e.g.*, the user selectable element for the suggested search for Bruno Mars videos), the set-top-box transmits to an on-demand system (*e.g.*, the Stingray UbiquiCAST music content origin server) an on-demand request message for causing the on-demand system to transmit to the set-top-box the information identifying the set of available on-demand videos (*e.g.*, information identifying the set of 12 available Bruno Mars on-demand videos).



54.     In the Stingray Music Method, the set-top-box displays a menu of the available on-demand videos (*e.g.*, a menu of the available Bruno Mars on-demand videos) as a result of receiving the information.



## COUNT I
### (Infringement of U.S. Patent No. 9,414,121)
### (35 U.S. C. § 271(a))

55.     Music Choice repeats and re-alleges each and every allegation of paragraphs 1-54 as if fully set forth herein.

56.     The '121 Patent is valid and enforceable.

57.     By its use, sale, and/or offer for sale in the United States, and/or importation into the United States, of the Stingray Music System/Method, Stingray has been and is now infringing at least claims 1, 6, and 14 of the '121 Patent, in the State of Texas, in this judicial district, and elsewhere, in violation of 35 U.S.C. § 271(a).

58.     Stingray's actions are without the consent of Music Choice.

59.     Stingray's infringement has been and is now willful and deliberate.  Stingray has and continues to use, sell and/or offer for sale in the United States, and/or import into the United States, the infringing Stingray Music System/Method despite an objectively high likelihood that

its actions constituted infringement of the '121 Patent.  This objectively-defined risk of infringement was known or so obvious that it should have been known to Stingray.

60.     As a result of Stingray's actions, Music Choice has suffered and continues to suffer substantial injury.  Music Choice has been and will continue to be irreparably harmed unless Stingray's infringement of the '121 Patent is enjoined.

61.     Music Choice has been and will continue to be damaged by Stingray's infringement of the '121 Patent, in an amount to be proven at trial.

62.     At least by filing and serving this complaint for patent infringement, Music Choice has given Stingray written notice of its infringement.

## JURY DEMAND

63.     Music Choice hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Music Choice prays that the Court enter judgment against Stingray and in favor of Music Choice, as follows:

A.  Finding that the '121 Patent, was duly and lawfully issued, and are valid and enforceable.

B.  Finding that Stingray has infringed one or more of the claims of the '121 Patent;

C.  Awarding damages to Music Choice in accordance with 35 U.S.C. § 284, including pre-judgment and post-judgment interest, to compensate Music Choice for Stingray's infringement of the '121 Patent;

D.  Ordering preliminary and permanent injunctive relief restraining and enjoining

Stingray and its officers, agents, attorneys, employees, and those acting in privity or active

concert with Stingray, from infringement of the '121 Patent for the full terms thereof;

E.  Finding that this case is exceptional pursuant to 35 U.S.C. § 285;

F.  Awarding Music Choice its costs and attorneys' fees; and

G.  Awarding Music Choice such other and further relief as this Court deems just and

proper.

DATED:  August 9, 2016                Respectfully submitted,

                                      IRELAND CARROLL & KELLEY

                                      By: */s/ Otis Carroll*_____
                                      Otis Carroll -- State Bar No. 03895700
                                      otiscarroll@icklaw.com
                                      Collin Michael Maloney -- State Bar No. 00794219
                                      cmaloney@icklaw.com
                                      6101 S Broadway, Suite 500
                                      Tyler, TX 75703
                                      Tel: (903) 561-1600
                                      Fax: (903) 581-1071

                                      and

                                      ROTHWELL, FIGG, ERNST & MANBECK, P.C.
                                      Martin M. Zoltick*
                                      Sharon Davis*
                                      Michael V. Battaglia*
                                      Jennifer B. Maisel*
                                      607 14th Street, N.W. – Suite 800
                                      Washington, D.C.  20005
                                      Tel:  (202) 783-6040
                                      Fax:  (202) 783-6031
                                      Email: MC-Stingray-Serv@rfem.com

                                      *Attorneys for Plaintiff*

*Applications for admission *pro hac vice* to be filed in due course.